## THURLWELL et al. v. RABBIT et al.

No. 14700—Opinion Filed Oct. 21, 1924.

Rehearing Denied April 28, 1925.

### 1. Money Received—When Action Lies.

At common law assumpsit would not lie except upon a parol or simple contract, but the modern rule is well settled, and more in keeping with the spirit of the law, that the action will lie whenever one has the money of another which he. in equity and good conscience, has no right to retain.

### 2. Same—Privity of Contract.

Privity of contract is not necessary to support an action for money had and received, and the only privity required is that arising from a promise implied by law, that the defendant having money in his hands that rightfully belongs to plaintiff will pay it over to him.

### 3. Same—Parties Liable.

An action for money had and received lies not only against the one wrongfully appropriating the money, but also against one receiving it with knowledge of the appropriator's want of title.

### 4. Same—Legality of Contract.

If it appears that the defendants in a given case have received money or property from the complainants and which belongs to the latter, the same may be recovered without inquiry into the nature of the contract under which such money or property was acquired. The distinction is between enforcing an illegal contract and asserting title to money and property which has arisen from it.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Tulsa County; Redmond S. Cole, Judge.

Action by James Rabbit et al. against C. R. Thurlwell et al. Judgment for plaintiffs, and defendants bring error. Affirmed.

Franklin H. Griggs, Fred B. Lathrop, and C. R. Thurlwell (per se), for plaintiffs in error.

Linebaugh & Pinson. for defendants in error.

Opinion by JONES. C. This suit was instituted in the district court of Tulsa coun-

ty, Okla., by the appellees, plaintiffs in the trial court, against the appellants, de endants in the trial court, to recover certain sums of money which had originally been placed in the hands of appellant Thurlwell, who thereafter disbursed same, paying different sums to the various appellants herein named. This cause of action is the outgrowth of a proceeding had in the federal court of the Eastern District of Oklahoma, wherein the government brought suit, styled United States v. Hettie Lena et al., reported in 261 Fed. 144, wherein the government sought to cancel an allotment of land, allotted to Emma Coker, a full-blood Creek Indian, upon the theory that Emma Coker was a fictitious person, and that Emma Coker and Hettie Lena were one and the same person. James Rabbit, the husband of Emma Coker, Cinda Hill, the widow of Amos Rabbit, son of James Rabbit and Emma Coker, and Jasper Bell, as the guardian of Edmond Rabbit, the minor son of Amos Rabbit, and Cinda Hill, and C. H. Dreff, administrator of the estate of Amos Rabbit, deceased, were parties to the suit in the federal court, and J. H. Goodwin and James Mackin were interveners in the suit. Upon the trial of the case in the federal court, and at the time the court had at least indicated what its judgment would be, or possibly after he had rendered his judgment, wherein he found against the government in its contention that Emma Coker was a fictitious person, or that she was not a bona fide allottee of the lands in controversy, appellants made and entered into an agreement which they termed a settlement and compromise of their respective contentions, wherein they disregarded the judgment rendered by the court, and agreed to a division of the spoils involved in the case, consisting of the royalties which had accrued at that time, amounting to about $52,000, which was then in the hands of F. B. Faulkner, a party who had developed, or rather in whose name, the property had been developed, under an oil and gas lease, secured by Faulkner from one Rhoda Tiger, who seems to have claimed some interest in the land, and for the purpose of the agreement, settlement, or compromise entered into, was recognized as a rightful heir of Emma Coker, the allottee. Faulkner seems to have held in his possession the royalty interest, or one-eighth of the proceeds derived from the production of oil and gas on the land involved; and whether he held it in trust or not, the record does not disclose, but for the purpose of the agreement entered into by the parties, he was recognized as a trustee, and as such paid the money to the appellant Thurlwell, who was

to disburse it to all of the parties concerned in the following manner:

"To Charley Coker, interest 11-40; to the Rabbit and Weasey Coker interest 10-40; to the Rhoda Tiger interest 10-40; to Thomas Atkins and J. D. Sims 5-40; to Hettie Lena, J. L. Haner and Thomas R. Shaw interest 4-40 and that the said respective proportions of said royalties earned and to accrue are hereby accepted and shall be accepted by each of the said respective parties in full settlement and satisfaction of all claims of the respective parties of any interest in the oil and gas values of said land. * * *"

It is further agreed that by and upon the execution of this contract the title of all the accumulated royalties, and the royalty, oil, and gas interest in said land, shall be held by F. V. Faulkner in trust for the respective parties in the proportion above set out; which agreement was signed by the various parties participating in same. Counsel for appellants in their brief state:

"The agreement to which reference has thus been had, the exact provisions of which were purposely withheld from Judge Campbell."

And further state that the agreement had not been reduced to writing when Judge Campbell rendered his decision, but afterward was reduced to writing and executed by the parties.

The record further discloses that the interest contended for by the appellants Goodwin and Mackin was, by reason of an oil and gas lease secured from James Rabbit and Amos Rabbit, now deceased. as the heirs of Emma Coker, and an interest in which had been assigned to the appellant D. C. Acosta, and, like the lease held by Faulkner, had never been approved, and all the leases involved are conceded to be void and of no force and effect. Pursuant to the agreement, a portion of which has heretofore been quoted, F. V. Faulkner, who held the royalty interest pursuant to the agreement, paid to C. R. Thurlwell, attorney for the Rabbits, who were said to be the heirs of Emma Coker, and also was the attorney representing the other appellants, Goodwin, Mackin and Acosta, who disbursed the fund of $52,000 paid to him by Faulkner, the recognized trustee, to the appellants herein, Goodwin, Mackin, and Acosta, according to the terms of the agreement, and as we understand the record, claims to have paid all of the parties named in the agreement according to the terms thereof, but this is denied on the part of the appellees herein, plaintiffs in the trial court, who contend that they received but a very small sum. or various sums aggregating about $300.

On the trial of the case, a jury being waived, the matter was submitted to the judge, who, after hearing the evidence in the case, rendered judgment in favor of the plaintiffs, holding, in effect, that the plaintiff in error Thurlwell had received the sum of $52,456.50 as accumulated royalties, under the agreement heretofore referred to, that James Rabbit, Cinda Hill (who was the widow of Amos Rabbit), and Edmond Rabbit were the heirs of Emma Coker, Edmond Rabbit being the son of Cinda Hill and Amos Rabbit; that all of said heirs were full-blood Creek Indians; that Jasper Bell was the guardian of Edmond Rabbit, a minor, that C. H. Drew was the administrator of the estate of Amos Rabbit, deceased. The court further found that the appellant Thurlwell was entitled to receive as an attorney fee 25 per cent. of the amount received by him, and that the balance then should be divided one-eighth to the defendants in error, and seven-eighths to the plaintiffs in error; that judgment should be against the plaintiffs in error C. R. Thurlwell, James Mackin, and J. D. Goodwin for the sum of $19,348.74, and against Thurlwell, Mackin, Goodwin, and Acosta in the sum of $5,831.00, together with interest from April 30th at six per cent., and cost. From which judgment of the court the appellants prosecute this appeal, and set forth numerous asignments of error, and in the first proposition presented in their brief appellants complain of the conduct of the trial court in refusing to hear argument on the part of counsel at the close of the evidence and prior to the rendition of judgment, and assert that the conduct of the court constitutes an abuse of discretion. They also assert that they were not permitted to submit authorities in support of their views; however, no authority is cited in support of this contention, and while ordinarily we are of the opinion that it is proper to give counsel an opportunity to be heard, and to submit authorities in support of his views, however, this is a matter entirely within the discretion of the court, and is not such an error as will justify a reversal, or upon which you can base the right to reverse a case. If the court commits error by reason of inadvertence or failure to 'take the time to properly advise himself, it necessarily results in error that can be properly raised by the ordinary and well-defined channels governing and directing appeals. If the court passes upon a case without the assistance and the information to be obtained from argument of counsel, and submission of authorities, and commits no error, by reason of his familiarity and knowledge of the facts and of the law, then there is no abuse of discretion in refusing to extend the courtesy to counsel of having made an argument, and having submitted authorities in support of same. It is the error of the trial court with which the appellate court is concerned, and not the cause or manner of the commission of same, so we find no merit in this contention.

The next proposition urged is that:

"In an action for money had and received it is for the plaintiff first to establish his title to the fund in question."

Appellants cite some authority in support of this rule, and insist that the Rabbits should first establish, by judicial proceedings, their interest in the fund in controversy by a proceeding to determine the heirs of Emma Coker, deceased, the original allottee, and call attention to the fact that under this jurisdiction the district court of Tulsa county had no authority or jurisdiction to determine who were the heirs of Emma Coker, and that until this was done the right of James Rabbit, the husband, and the heirs of Emma Coker, deceased, to the funds in controversy could not be otherwise established, and further contend that no recovery can be had for the reason that the agreement entered into under which the money was paid to the appellant Thurlwell was unauthorized and void, that said agreement was withheld from Judge Campbell, the trial judge in the federal court, at the time he rendered his opinion finding that Emma Coker was the rightful allottee, and further call attention to the fact that no interest of any full-blood heir can in any manner be disposed of, except by and through the method provided by the acts of Congress, and that it must be approved by the county court having jurisdiction of the settlement of the estate of the deceased, and cite the case of Goodrum v. Buffalo. 162 Fed. 817, 89 C. C. A. 325, wherein the court held that such an agreement was void, and therefore contend that the agreement upon which this money was paid to Thurlwell, being void, cannot be made the basis of a cause of action. With this contention we cannot agree. It is true that no determination of heirship has been had, but the record does disclose that the appellant Thurlwell is an attorney at law, representing the Rabbits in the suit brought in the federal court to cancel the allotment of Emma Coker, wherein it was alleged that they were the heirs of said Emma Coker. That allegation was denied on the part of the government. The federal court, however, found in favor of the Rabbits, upholding the allegation, which was an adjudication determining their rights, and while not

determining the question of heirship, as provided for by act of Congress, we think was sufficient to authorize the maintenance of this suit, and was sufficient to be binding upon their attorney, Thurlwell, and sufficient to estop him from taking advantage of such agreement as the record here discloses he entered into, whereby the fund which had been recovered, as an indirect result of the litigation pending in the federal court, was divided among other contendants, and so far as this record shows, very little of it ever found its way to the appellees herein, who are shown to be the heirs and were entitled to the entire fund, subject to such interest as the appellant Thurlwell may have had by reason of his contract with the appellees as their attorney. Appellant further contends that the action will not lie because of no privity of parties, no express contractual relations existing between the parties, and makes numerous other contentions in which we find no merit.

The appellees in reply to these various contentions call attention to the case of Allsman v. Oklahoma City, 21 Okla. 142, 95 Pac. 468, wherein this court said:

"It is true that, at common law, assumpsit would not lie except upon a parol or simple contract, but we think the modern rule well settled, and more in keeping with the spirit of the law, and that the action will lie whenever one has the money of another which he, in equity and good conscience, has no right to retain."

And in the case of Brooks v. Hinton State Bank, 26 Okla. 56, 110 Pac. 46, the court said that privity of contract is not necessary to support an action for money had and received, and the only privity required is that arising from a promise implied by law that the defendant having money in his hands that rightfully belongs to plaintiff will pay it over to him. Taylor v. Currey, 192 Ill. App. 502.

And in the case of Midland Saving & Trust Company v. Sutton. 30 Okla. 448, 154 Pac. 1133, it was held that money paid to the agent of two concerns for one of them, and applied by the agent to the claim of the other, might be recovered from the other as money received.

We think these authorities justify the character of suit brought, and the right of the appellees to maintain same.

And to the second phase of this proposition, involving liability of the attorney, Thurlwell, appellees cite the following authority (6 C. J. 707):

"Where an attorney collects money belonging jointly to several persons, one may not sue alone and recover his share: an accounting and adjustment to discover plaintiff's share being necessary"
—which clearly authorizes the joining of all the parties plaintiff.

And in the case of the Town of Bleecker v. Balje, 123 N. Y. S. 809, it is said:

"An action for money had and received lies not only against the one wrongfully appropriating the money, but also against one receiving it with knowledge of the appropriator's want of title."

It was therefore proper to include all parties defendant, and all plaintiffs claiming any title to this fund, so that the court might do complete justice among the parties.

In 27 Cyc. 849, the following rule is announced:

"An action for money had and received is said to be equitable in its nature and governed by equitable principles."

We are inclined to the opinion that the nature of the original transaction, the agreement entered into by defendants under which the fund was paid to Thurlwell, is not material in an action of this character. The fact that Thurlwell and the other appellants entered into an illegal agreement, which, as is disclosed by the record, was without the knowledge or consent of these appellees, should not permit them to take advantage of the fact that the agreement entered into was void, for, regardless of its invalidity, it resulted in Faulkner, who was holding the money in trust for the rightful owner, delivering same to the appellant Thurlwell, and he and the other appellants cannot be permitted to take advantage of their own wrong and plead the invalidity of their own agreement to the detriment of these appellees, the rightful owners of the fund. And in support of this theory our attention is called to the case of Martindale v. Shaha, 51 Okla. 670, 151 Pac. 1019, a well-reasoned opinion, citing many authorities in point, among which we find the case of Cook v. Sherman. 20 Fed. 167:

" 'Where several persons enter into an illegal contract for their own benefit and the illegal transaction has been consummated and the proceeds of the enterprise have been actualy received and carried to the credit of one of such parties, so that he can maintain an action therefor without requiring the aid of the illegal transaction to establish his case, he may be entitled to relief', and that; 'According to this rule, the question in such cases must always be: Can the plaintiff maintain his action without enforcing the illegal contract, or, in other words, has he a cause of action independent of the ille-

gal contract? If it appears that the defendants in a given case have received money or property from the complainants and which belongs to the latter, the same may be recovered without inquiry into the nature of the contract under which such money or property was acquired. The distinction is between enforcing an illegal contract, and asserting title to money and property which has arisen from it.'"

In 6 Corpus Juris 707, the rule is as follows:

"An attorney who has collected money for his client, is estopped * * * to claim that the client has not title to the money collected."

These authorities, we think, are decisive of the rights of the parties in this case, and clearly sustain the judgment of the trial court.

Appellants discuss various other propositions, as to the validity of the administration proceedings involving the estate of Amos Rabbit, and the insufficiency of the evidence to establish relationship of appellees, calling attention to the fact that there is no sufficient proof to show that Cinda Hill was the widow of Amos Rabbit, or that Jasper Bell was the legal guardian of Edmond Rabbit, or that the said Amos Rabbit was the legal heir of Emma Coker, but, as we view it, these facts are merely incidental to the real issue in this case—in fact, those questions were not issues involved. They also complain of the fact that the court did not, on its own motion, make F. B. Faulkner a party to the action and contend that by reason of the fact that he was not a party to the suit, in contemplation of law as the trustee of the funds in controversy, he still holds the funds in dispute in his hands, as far as this case and the Rabbit interest are concerned. Again appellants seek to take advantage of the invalidity of the agreement entered into, which was of their own making, and which resulted in the fund being placed in the hands of the appellant Thurlwell, who was the attorney of the parties who are now complaining, and it is evident that it was paid or delivered to the said Thurlwell as the attorney of these parties, and for the purpose of a proper disbursement and payment to the heirs of Emma Coker.

Appellants cite many authorities in support of the rule that there can be no recovery under a void contract, and reassert that the agreement which is the basis of this cause of action is invalid, and that it is an attempt to convey and dispose of the interest of full-blood Indian heirs in full-blood inherited lands without the approval of the county court having jurisdiction of the settlement of the estate of the deceased allottee. We have no controversy to make with the authority cited, and the rule announced, but we are unable to see any proper application of such rules of law to a state of facts such as we are here confronted with, and to apply such rule in the manner contended for by appellants would be to destroy the rule, and make it a vehicle of fraud and disreputable practices rather than a barrier and safeguard against fraud and such practices. In fact, as heretofore stated, the only issue here is that of who is entitled to the proceeds which were placed in the hands of the appellant Thurlwell, and by him disbursed to the other plaintiffs in error, as between them and the appellees herein, who, so far as the record discloses, are evidently the rightful claimants of same, and the manner of obtaining the funds or the means and process by which Thurlwell and the other appellants came into possession of the same is not material.

In our opinion the judgment of the trial court is much more favorable to the appellants than they are entitled to, but no cross-appeal having been taken by defendants in error, we take it that it is proper to affirm the judgment which they have accepted, and we therefore recommend that the judgment of the trial court be affirmed.

By the Court: It is so ordered.