945 P.2d 469 (1995)
Michael SHOLER, Sharon Morales, Anastasia E. Dalton, Harold E. Kuykendall, Gregory Lynn Parham, Wanda Johnson, Patsy Weiss, Calvin N. McCaskell, Jr., Kevin L. Armstrong, and for themselves and all others similarly situated, Appellees/Counter-Appellants,
v.
STATE of Oklahoma ex rel. DEPARTMENT OF PUBLIC SAFETY, David R. McBride, Commissioner, Appellant/Counter-Appellee.
Nos. 83504, 83505.
Supreme Court of Oklahoma.
May 23, 1995.
As Corrected June 26 and August 14, 1997.
Opinion Supplementing Decision on Limited Grant of Rehearing July 1, 1997.
Richard D. Laquer, Bob G. Carpenter, William H. Stout, Oklahoma City, for appellees/counter-appellants Michael Sholer, et al.
Lisa McLaughlin-Molinsky, Michelle R. Day, Associate Counsel, Dept. of Public Safety, Oklahoma City, for appellant/counter-appellee State ex rel. Dept. of Public Safety David R. McBride, Com'r.
Guy L. Hurst, Asst. Atty. Gen., Oklahoma City, for appellant/counter-appellee State.
*471 HODGES, Justice.
This appeal raises several issues concerning the proper fees to be charged to reinstate a driver's license: This Court holds: (1) The suit was not barred by sovereign immunity or the Governmental Tort Claims Act. (2) The action was not subject to administrative appeal. (3) Fink v. Department of Public Safety is correct and the trial court was correct in applying it retroactively. (4) The trial court applied the wrong statute of limitations. (5) The trial court failed to take evidence concerning class certification. (6) The Fink holding applies to additional fees. (7) Appellees are entitled to interest on the amount overpaid in reinstatement and additional fees. (8) Injunctive relief is not necessary to implement the rule in Fink. (9) Designation as class representative may not be denied based solely on the proposed representative's felony conviction.

BACKGROUND
This action arose as a result of the Court of Appeals' decision in Fink v. Department of Public Safety, 852 P.2d 774 (Okla.Ct.App.1992). Fink held that the Department of Public Safety (DPS) had misapplied section 6-212 and section 6-212.1 of title 47 by stacking reinstatement fees for each offense. It held that only one reinstatement fee could be collected for reinstating a driver's license. The opinion was published by order of the Court of Appeals. This Court denied certiorari review of the case on April 14, 1993. DPS changed its policy to conform with Fink on July 6, 1993. This action was filed on July 7, 1993.
This action was brought as a class action by drivers who were charged multiple license reinstatement fees and/or multiple additional fees. Injunctive relief was also sought to prohibit DPS from collecting multiple fees.
The petition divided drivers into five subclasses. Subclass "A" consisted of all who had been charged multiple reinstatement fees and/or multiple additional fees before December 9, 1992. Subclass "B" contained members who were overcharged after December 8, 1992, but before April 15, 1993. Subclass "C" was comprised of those who were overcharged after April 14, 1993, but before July 7, 1993. Subclass "D" consisted of those who were overcharged after July 6, 1993. Subclass "E" was comprised of members whose licenses had been suspended or revoked and who sought injunctive relief against DPS to force it to collect one reinstatement fee in compliance with Fink.
DPS moved to dismiss the action on jurisdictional grounds. The trial court denied the motion. DPS then asked this Court to assume original jurisdiction and prohibit the proceeding in the trial court. Its request was declined.
*472 During this time, DPS paid refunds to one plaintiff in the class action and a few other drivers who had complied with the claims procedure of the Governmental Tort Claims Act. DPS also issued over 1300 unsolicited refund checks to drivers who paid multiple reinstatement fees after this Court denied certiorari review in Fink but before DPS implemented the new policy.
The class action plaintiffs prevailed on a motion for summary judgment. Additionally, the trial court granted certification of a class comprised of members who had paid more than one reinstatement fee between July 6, 1988, and July 6, 1993. Certification was denied to subclasses "C", "D" and "E".
After the trial court's decision, the Legislature passed Senate Joint Resolution 33 (SJR 33). That document purported to express legislative intent with regard to reinstatement fees. In essence, it expressed disapproval with Fink and stated that the Legislature's intent in enacting the licensing fee statutes was to require a reinstatement fee for each offense.
DPS asked the trial court to reconsider its decision in light of SJR 33. The trial court declined to do so. DPS then brought two appeals which have been consolidated for review. Appellees have filed counter petitions.
While this appeal was pending, DPS asked this Court for a temporary order to resolve the conflict between the Fink decision and SJR 33. The motion for temporary order was denied.

I. SOVEREIGN IMMUNITY AND THE GOVERNMENTAL TORT CLAIMS ACT
DPS has invoked the protection of sovereign immunity from suit. It argues that the appellees have raised tort claims for damages and that this makes them subject to the claims procedures found in the Governmental Tort Claims Act, Okla.Stat. tit. 51, §§ 151-171 (1991) (GTCA). Appellees argue that the action does not lie in tort, but rather is one for "money had and received." Classification of the action determines whether the GTCA applies and thus, whether the trial court had jurisdiction to hear the matter.
The GTCA lists specific exemptions from liability in section 155 of title 51. The state is not liable if a loss or claim results from:
11. Assessment or collection of taxes or special assessments, license or registration fees, or other fees or charges imposed by law;
12. Licensing powers or functions including, but not limited to, the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority;
. . . .
DPS claims this section exempts it from all liability. However, the power of DPS to collect license fees or its power to issue or suspend a driver's license is not at issue. The appellees' claim is that DPS misinterpreted the reinstatement fee provisions when it collected more than the fee imposed by law. Thus, the GTCA exemptions for licensing and collecting statutory fees are not implicated.
Nor does appellees' action fall within the GTCA definition of a tort claim. The GTCA defines "claim" as "any written demand presented by a claimant or his authorized representative in accordance with this act to recover money from the state or political subdivision as compensation for an act or omission of a political subdivision or the state or an employee." Id. at § 152(3) (emphasis added). Appellees are not seeking compensation. Rather, they are seeking a refund of unauthorized reinstatement fees collected by DPS.
The GTCA also defines "tort" as
a legal wrong, independent of contract, involving violation of a duty imposed by general law or otherwise, resulting in a loss to any person, association or corporation as the proximate result of an act or omission of a political subdivision or the state or an employee acting within the scope of employment.
Id. at § 152(11). Again, appellees are not seeking compensation for a loss caused by the state. Instead, they seek a refund of the *473 amount overpaid for license reinstatement. Their action is one for money had and received. As such, the GTCA provides no bar to their action. Appellees were not required to comply with the claims procedure provided in the Act.

II. ADMINISTRATIVE APPEAL
DPS asserts that the appellees failed to challenge the assessment of multiple reinstatement fees under section 6-211 of title 47. That section provides a right of appeal to the district court within thirty days to "[a]ny person denied a license, or whose license has been canceled, suspended or revoked by the Department." DPS argues that the collection of reinstatement fees are somehow part of the revocation process and that any challenge to a reinstatement fee must be brought within thirty days.
By its own terms, however, section 6-211 applies to persons appealing the suspension or revocation of their licenses. Appellees are not making such an appeal. They are seeking refunds of fees collected in excess of those allowed by statute. The thirty-day provision does not apply to appellees' challenges.

III. FINK V. DEPARTMENT OF PUBLIC SAFETY

The central issue in this appeal is whether the Court of Appeals' decision in Fink v. Department of Public Safety, 852 P.2d 774 (Okla.Ct.App.1992), was correct and whether it should have been applied retroactively. That decision applied section 6-212.1 of title 47 which, prior to its amendment effective April 1, 1995, provided:
A. Whenever a driver's license or a person's privilege to operate a motor vehicle is suspended or revoked pursuant to the provisions of Section 7-506 or 7-605 of this title, the license or privilege to operate a motor vehicle shall remain under suspension or revocation and shall not be reinstated until:
1. The expiration of the revocation or suspension order; and
2. The person has paid a reinstatement fee of One Hundred Dollars ($100.00) to the Department.
B. Whenever a driver's license or a person's privilege to operate a motor vehicle is suspended or revoked pursuant to the provisions of Sections 6-205, 6-205.1, 753 or 754 of this title, the license or privilege to operate a motor vehicle shall remain under suspension or revocation and shall not be reinstated until:
1. The expiration of the revocation or suspension order; and
2. The person has paid a reinstatement fee of One Hundred Fifty Dollars ($150.00) to the Department.
Provided, any person whose driver's license or privilege to operate a motor vehicle is suspended or revoked pursuant to Section 6-205 of this title shall not be required to pay such reinstatement fee until such conviction becomes final.
repealed by 1994 Okla.Sess.Laws 696. Fink held that DPS was mistaken in its belief that the statute permitted it to continue to suspend a license for each subsequent offense and then condition reinstatement on the payment of multiple fees. This Court denied DPS's request for certiorari review of that opinion.
DPS correctly observes that the Fink opinion was not binding on the trial court in this action. Section 30.5 of title 20 provides that "[n]o opinion of the Court of Appeals shall be binding or cited as precedent unless it shall have been approved by the majority of the Justices of the Supreme Court for publication in the official reporter." See also Okla.Stat. tit. 12, ch. 15, app. 2, Rule 1.200 (1991).
No publication order was issued by this Court. The opinion was published only by order of the Court of Appeals. Therefore, the trial judge was free to disregard the Fink decision. He was also free, however, to treat the decision as persuasive authority in deciding the issues in this matter. The fact that Fink is non-binding requires this Court to now apply section 6-212.1 to these facts.
This Court's analysis of that provision leads to the same result reached in Fink. *474 The statute clearly provided for "a" reinstatement fee. DPS misapplied the statute by charging multiple reinstatement fees.
DPS argues that its long-standing interpretation of the statute should be given the deference normally granted to agency interpretation citing the rule in United Airlines, Inc. v. State Board of Equalization, 789 P.2d 1305 (Okla.1990). That decision held that "[t]he continual construction of a statute by the agency charged to enforce it must be given great weight." Id. at 1311. It further held that where the Legislature has not expressed its disapproval with an agency's construction of a statute, the Legislature's silence may be regarded as acquiescence in the agency's construction. Id. at 1311-1312. Great deference to an agency's construction, however, does not require that it be allowed to misapply a statute that, as the Fink court observed, was "not ambiguous and does not require construction." Fink, 852 P.2d at 776.
DPS also asserts Senate Joint Resolution 33 (SJR 33) as authority for the proposition that the Legislature's true intent was that multiple reinstatement fees be collected. That resolution, made in response to the Fink decision, was the subject of this Court's order of October 27, 1994 in this matter. In that order this Court held that "[t]he joint resolution of the legislature is ineffective to change the Court of Appeals' prior construction of 47 O.S.1991 § 6-212.1 because construction of existing statutes is a judicial and not a legislative function. Stephens Produce Co. v. Stephens, 332 P.2d 674 (Okla.1958)." That order disposes of the argument and no further discussion is needed.
Next, DPS argues that the trial court erred in refusing to give Fink prospective only application. DPS acknowledges the general rule that decisions are generally applied retroactively. It then urges this Court to apply the exception found in Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), which was adopted by this Court in Griggs v. State, 702 P.2d 1017, 1020, 1021 (Okla.1985). That decision articulated the following factors:
First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively."
Chevron, 404 U.S. at 106-07, 92 S.Ct. at 355 (citations omitted). Appellees urge that the balancing test of Chevron has lost its vitality in American jurisprudence as a result of the United States Supreme Court decisions in Harper v. Virginia Department of Taxation, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993); Beam Distilling Co. v. Georgia, 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991); and Davis v. Michigan Department of Treasury, 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). Appellees also cite Strelecki v. Oklahoma Tax Commission, 872 P.2d 910 (Okla.1993), for the same proposition. It is not necessary, however, to assess Chevron's vitality because its balancing test was not satisfied.
The Fink decision did not establish a new principle of law. It did not overrule past precedent. Nor did it invalidate the reinstatement fee statute. Fink merely corrected the department's misapplication of that provision. Correcting the application of an unambiguous statute does not result in the pronouncement of a new rule of law. Therefore, the general rule of retroactive application applies. The Fink decision will be applied retroactively subject to the proper statute of limitations.

IV. STATUTE OF LIMITATIONS
The trial court applied Fink retroactively applying the five-year limitations period provided in the sixth paragraph of section 95 of title 12. It provides that "[a]n action for relief, not hereinbefore provided for, can only be brought within five (5) years after the *475 cause of action shall have accrued." The trial court used this provision to apply Fink retroactively to five years before the date certiorari was denied in the Fink decision.
There are two problems with the trial court's decision concerning the statute of limitations. First, a more specific provision in section 95 applies to this action. Second, the date the cause of action accrued was the date each driver was overcharged, not the date certiorari was denied in the Fink decision.
Appellees brought this action as one for "money had and received." Such an action arises when one has received money which in equity and good conscience should be paid to another. Continental Oil v. Rapp, 301 P.2d 198 (Okla.1956). The obligation to repay the money does not arise from the assent of the parties, it is implied in law. A claim for a tax refund is an action for money had and received. See Estate of Kasishke v. Oklahoma Tax Comm'n, 541 P.2d 848, 853 (Okla.1975). A claim for a fee refund is no less such an action. The applicable statute of limitations for the action is the three-year provision in section 95, second, for "[a]n action upon a contract express or implied not in writing." See, e.g., Grider v. USX Corp., 847 P.2d 779, 785 (Okla.1993). The trial court erred in applying the five-year provision.
Additionally, the trial court applied the statute of limitations from the date certiorari was denied in Fink, April 29, 1993. The cause of action accrued, however, the date each driver was overcharged. Each driver then had three years in which to bring an action.
If a class action is certified on remand, it must include only those drivers who were overcharged within the three years immediately preceding the filing of this action on July 7, 1993. Any claims arising from overpayment prior to July 7, 1990, are barred by the statute of limitations.

V. CLASS ACTION
DPS argues that the trial court abused its discretion in granting the class action. It argues that the appellees failed to present evidence to prove the requirements for a class action had been satisfied. Further, it argues, evidence was not presented to demonstrate that the class representative could adequately protect the interests of the class.
The statutory prerequisites for maintaining a class action are listed in section 2023 of title 12 which provides:

Class Actions
A. PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if:
1. The class is so numerous that joinder of all members is impracticable;
2. There are questions of law or fact common to the class;
3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
4. The representative parties will fairly and adequately protect the interests of the class.
B. CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subsection A of this section are satisfied and in addition:
1. The prosecution of separate actions by or against individual members of the class would create a risk of:
a. inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
b. adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
2. The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
3. The court finds that the questions of law or fact common to the members of the *476 class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
a. the interest of members of the class in individually controlling the prosecution or defense of separate actions,
b. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class,
c. the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and
d. the difficulties likely to be encountered in the management of a class action.
Thus, those wishing to maintain a class action must demonstrate each of the requirements in subsection A and one of the requirements of subsection B.
While class certification is an area of wide discretion for the trial court, the record in this case does not demonstrate that evidence was presented concerning the statutory requirements. Near the end of the last transcript designated for review in this appeal, the trial judge noted that he might have to hear some evidence on the class certification issue. He told appellees' counsel to prepare a proposed order certifying the class and indicated that he would hear evidence on the matter at the time the proposed order was presented to him. The record on appeal, however, does not indicate that evidence was ever presented concerning class certification. On remand, the trial court must hear evidence before certifying or refusing to certify the class.

VI. ADDITIONAL FEES
Appellees, by way of counter appeal, argue that the holding in Fink should be extended to the additional fees listed in title 47. The version of section 7-605(A) in effect prior to April 1, 1995, provided that a license could be suspended for operating a vehicle when no liability security exists. It further provided that "[a]ny person failing to voluntarily relinquish the suspended license or registration to the Department within sixty (60) days of receipt of said notice shall pay a fee of Fifty Dollars ($50.00) in addition to the One Hundred Dollar ($100.00) reinstatement fee." Similarly, section 7-609(B) provided for a fifty dollar additional fee if a suspended license or license plate was not turned over to DPS within thirty days after suspension for failing to timely furnish proof of insurance.
Appellees argue that these additional fees were really part of the reinstatement fee. DPS responds by noting that the additional fees are listed separately from the reinstatement fee. It also notes that the additional fee does not apply to every suspension, only those in which the suspended license, registration, or plate is not turned in to DPS.
DPS is correct. The clear language of the statute demonstrates that the additional fee is separate from the reinstatement fee. What is equally clear, however, is that DPS is authorized to collect only one additional fee where applicable. Its practice of stacking additional fees for each offense during suspension is not authorized. Those against whom DPS stacked additional fees are entitled to a refund of the excess amount. Also, the DPS practice of using the date of arrest to determine the statutory fee is incorrect. The proper statutory fee is the one in effect at the time of reinstatement.

VII. INTEREST ON REFUNDS
Appellees assert section 6 of title 23 as authority for their request for prejudgment interest on their overpayments of reinstatement and additional fees. That section provides:
Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt.
Appellees also note that the statutory form for a "money had and received" petition includes *477 a request for interest. See Okla.Stat. tit. 12, § 2027, form 7 (1991). DPS argues, however, that section 6 does not apply because the right of each driver to recover damages must be "certain, or capable of being made certain" and must be "vested in him on a particular day." Essentially, DPS argues that appellees' claims are unliquidated because they were disputed.
The fact that the claims were disputed by DPS, however, does not make the debt unliquidated. The amount of the debt may be determined simply by looking at what DPS collected from each driver and subtracting the correct reinstatement fee and additional fee where applicable. The right to recover that amount vested on the date the driver was overcharged. Thus, section 6 applies and drivers are entitled to prejudgment interest on their overpayments.
Another aspect of this issue concerns the over 1300 recipients of unsolicited refunds DPS mailed to those who paid multiple reinstatement fees after Fink but before DPS implemented that decision. Apparently, at least one of those recipients became a party to this action. Michael Leppert was dismissed from this action after he endorsed his refund check in open court after his lawyer scratched out the release that had been stamped upon the back of it. The trial court held that acceptance of the refund had made Leppert's claim for prejudgment interest moot. He was dismissed from the action.
Although the trial court stated no reason for dismissing the interest claim, DPS asserts section 8 of title 23. That section provides that "[a]ccepting payment of the whole principal, as such, waives all claim to interest."
If Mr. Leppert accepted payment of the entire refund to which he was entitled, he waived any interest. If, however, DPS failed to refund any additional fees that might have been collected in addition to the one allowed, he is entitled to interest only on the unrefunded amount. The same is true of any of the recipients of unsolicited refunds.

VIII. INJUNCTIVE RELIEF
One of the appellees, Kevin Armstrong, had below sought an injunction to prohibit DPS from collecting multiple reinstatement fees from him as a condition to reinstating his driver's license. The trial court refused to grant that injunction apparently because DPS had changed its policy of stacking reinstatement fees. On appeal the appellees express the concern that DPS might change "its procedures and policies in the future to administratively negate Fink."
This opinion should allay appellees' concerns by giving precedential effect to the rule announced in Fink. Therefore, appellees' request for injunctive relief is moot.

IX. CLASS REPRESENTATIVE
The trial court denied designation as class representative to Anastasia Dalton "due to her present status as a convicted felon." It was error to do so. The Oklahoma Constitution's guarantee of access to the courts found in article 2, section 6, applies "to every person" irrespective of a felony conviction. On remand, the trial court shall consider designating Anastasia Dalton as class representative without regard to her felony conviction.

INSTRUCTIONS TO TRIAL COURT ON REMAND
On remand the trial court is directed to take evidence on the issue of whether this matter meets the statutory requirements for a class action. If such a finding leads to the conclusion that a class should be certified, it should consist of those drivers who paid multiple reinstatement fees and/or multiple additional fees between July 7, 1990, and July 7, 1993. The class should include drivers who received unsolicited refunds from DPS, but only if the refund amount did not reimburse all of the overpayment of reinstatement and/or additional fees. Additionally, designation as class representative may not be denied based solely on the proposed representative's felony conviction.
Finally, it should be noted that this opinion in no way construes the amendments to the provisions in title 47 mentioned herein which became effective on April 1, 1995.
*478 TRIAL COURT AFFIRMED IN PART; REVERSED IN PART; CAUSE REMANDED WITH INSTRUCTIONS.
ALMA WILSON, C.J., and HARGRAVE, SUMMERS and WATT, JJ., concur.
KAUGER, V.C.J., and LAVENDER, SIMMS and OPALA, JJ., concur in part, dissent in part.

SUPPLEMENTAL OPINION ON REHEARING
SUMMERS, Vice Chief Justice.
¶ 1 On rehearing, the Department of Public Safety asserts that appellees failed to follow the mandate of 62 O.S.1991 § 206, the provisions of which it claims to be jurisdictional. A jurisdictional issue raised for the first time on rehearing should be addressed by the Court. Matter of Estate of Pope, 733 P.2d 396, 399 (Okla.1986). Section 206 states:
A. In all cases where it is alleged or claimed that fees or taxes of the state are in whole or in part unconstitutional or otherwise invalid, the aggrieved person shall pay the full amount thereof to the proper collecting officer and at the same time give notice in writing to said officer stating the grounds of his complaint and that suit will be brought against him for the recovery of all or a specified part of said fees or taxes. . . .
DPS urges that appellees were required to follow Section 206, and that by failing to give notice in writing at the time the fees were paid the appellees are precluded from bringing suit in state court.
¶ 2 We do not view the statute as an impediment to the District Court's exercise of jurisdiction. Okla. Const. Art. 7 § 7. However, even if it were otherwise, the statute, as explained below, would not be a bar to recovery.
¶ 3 Appellees (the drivers who were charged multiple reinstatement fees) correctly assert that they were not required to follow Section 206, because they were not claiming a fee to be unconstitutional or invalid. They do not dispute the validity of reinstatement fees. Rather, they dispute only the accounting practices of the DPS in requiring the payment of multiple reinstatement fees. Appellees do not challenge the statute under which the fees are paid. In fact, they rely on the statute and its validity in asserting that the statute permits the collection of only one fee.
¶ 4 We agree with appellees. Their theory of recovery is not based on the invalidity or unconstitutionality of a statute. It is based on improper accounting practices. While one fee may be validly recovered according to the terms of the statute, multiple fees may not. Section 206 is not applicable to the appellees under these facts.
¶ 5 KAUGER, C.J., SUMMERS, V.C.J., and HODGES, OPALA and ALMA WILSON, JJ., concur.
¶ 6 LAVENDER, SIMMS, HARGRAVE and WATT, JJ., concur in part and dissent in part.
LAVENDER, Justice, with whom HARGRAVE, Justice, joins concurring in part and dissenting in part.
¶ 1 The Court's pronouncement holds that the Department of Public Safety's [DPS] procedure of charging and collecting multiple fees for the reinstatement of suspended drivers' licenses is an impermissible accounting procedure under the applicable statutes. The court (1) concludes that the plaintiffs' action for monies had and received is based on an obligation "implied in law" and (2) applies a three year statute of limitations. In disposing of the State's sovereign-immunity defense the court holds that the plaintiffs' claims [for monies had and received] (a) do not fall within the Governmental Tort Claims Act's [GTCA] definition of a tort claim and (b) are hence not barred because they are seeking a refund of monies overpaid the State as opposed to compensation for an agency's or employee's act or omission. By its opinion the court impliedly holds that the plaintiff's claims fall within the ambit of the sovereign-immunity waiver for actions alleging a breach of contract, first recognized in State Board of Public Affairs v. Principal Funding Corp., 542 P.2d 503, 506 (Okla. 1975). This is so even though that jurisprudence's *479 guidelines for extending the waiver of sovereign immunity to contract claims are not met in this case.
¶ 2 Although I agree with the result reached by the court's pronouncement, I rescind from the court's decision that three years is the applicable limitation period. While I would allow the plaintiffs' action to prevent the State's unjust enrichment, I would hold that the common-law principles which undergird their claims lie in the substantive law of restitution. Although quasi-contractual precepts are a part of the common law of restitution,[1] not all restitutionary actions are properly classified as contractual in nature.[2] Such is the case here. Recognizing the plaintiffs' claims are restitutionary in character, I would grant a waiver of the State's sovereign immunity to their action and apply a five-year statute of limitation.[3]

I

THE RELIEF AWARDED TO THE PLAINTIFFS BY THE DISTRICT COURT RESTS NEITHER IN THE LAW OF TORTS NOR CONTRACTS BUT INSTEAD IS A COMMON-LAW RESTITUTIONARY REMEDY AVAILABLE AT LAW TO PREVENT UNJUST ENRICHMENT
¶ 3 The plaintiffs' actionfor money had and receivedlies not in the law of contract or tort but rather in the substantive law of restitution.[4] Unlike the common law of contracts, which protects the fulfillment-of-expectation interest, and the law of torts, which protects the plaintiff from wrongfully inflicted harm, restitutionary remedies are designed to guard against unjust enrichment. In their action the plaintiffs do not seek the return of the earlier paid reinstatement fee. Rather, they seek a money judgment for that part of the charges exacted by DPS which were in excess of the fees allowed by statute. It is this fragment of the assessed sum which unjustly enriches the State at the expense of the reinstated driver.
¶ 4 Under the facts presented by the record the State is unjustly enriched by its use of improper accounting principles in computing the reinstatement fees owed by suspended driverswithout having committed any other civil wrong. Certainly no contract can be implied from the disclosed facts. Recognizing this truth, the court requires the State to refund the overpayments based on an implied-at-law obligation. The remedy applied *480 by the court is quasi contractual.[5]
¶ 5 Where, as here, the State's liability is predicated on a finding of unjust enrichment (and not an implied-in-fact contract between the parties), the law of restitution is substantive as distinguished from remedial.[6] The plaintiffs' claims are hence not ex contractu. The character of the substantive right [here restitutionary] which the plaintiff aserts is critical to ascertaining the correct statute of limitation. The court's opinion today clouds this distinction by its implicit finding that the court's earlier waiver of sovereign immunity for contract actions governs the plaintiffs' cause in which a restitutionarynot contractualright is being asserted.
¶ 6 In Principal Funding[7] this court held that the State waived its sovereign immunity when (1) the plaintiff had entered into a valid contract with the proper State official and (2) a valid appropriation had been made.[8] Neither of these criteria are met by the plaintiffs in this case. In earlier jurisprudence where the plaintiff had been allowed to pursue a claim for monies had and received against the state, the pressed claim was specifically authorized by statute, e.g., tax refunds,[9] and sovereign immunity was not at issue. Such is not the case here. There is no statutory authorization for the type of claims brought by the plaintiffs in this case. While today's decision implies a waiver of sovereign immunity in restitutionary actions, it leaves that issue unaddressed. Because the court's holding obfuscates the line drawn between restitutionary and contractual claims, I cannot accede to its reasoning.

II

COMMON-LAW SOVEREIGN IMMUNITY SHOULD NOT BAR RESTITUTIONARY ACTIONS
¶ 7 Since the plaintiffs' claim has its basis in the common-law of restitution, the State's immunity from suit is in issue.[10] The doctrine of sovereign immunity derives from feudal England and is based upon the tenet that "the King can do no wrong."[11] Historically, the doctrine's effect has been to deny the enforcement of claims against the government unless its express consent to suit is first secured.
¶ 8 Today, both legislatures and courts alike embrace the concept that citizens have a right to expect the same standard of honesty and fair dealing in their contact with the state or other political entities, which they are legally accorded in their dealings with other individuals. Reason no longer supports the use of sovereign immunity by the state to obtain unjust enrichment at the expense of a citizen.[12] Hence, I would recommend its abolition and would allow the plaintiffs to proceed with their restitutionary claim.
NOTES
[1] See RESTATEMENT OF RESTITUTION Part 1 The Right to Restitution (Quasi Contractual and Kindred Equitable Relief) (1937).
[2] In assaying the applicable common-law principles George E. Palmer's statement in his treatise, THE LAW OF RESTITUTION (1978), is particularly insightful. There he stated:

Restitution based upon unjust enrichment cuts across many branches of the law, including contract, tort, and fiduciary relationship, but it also occupies much territory that is its sole preserve. [Emphasis added.]
[3] The trial court applied the limitation period set forth in 12 O.S.Supp.1993 § 95, seventh whose pertinent terms provide:

Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:
* * * * * *
Seventh. An action for relief, not hereinbefore provided for, can only be brought within five (5) years after the cause of action shall have accrued. [Emphasis added.]
[4] An action for money had and received lies whenever one has money of another and no corollary right of retention. While the action is triable to a jury, it is controlled by principles of equity and fair dealing. Sarber v. Harris, 368 P.2d 93, 95 (Okla.1962); Thurlwell v. Rabbit, 110 Okla. 285, 235 P. 923, 926 (1925). At the early common law an action for money had and received was one of the early common counts in general assumpsit used by the common-law judges to remedy unjust enrichment. See George E. Palmer, THE LAW OF RESTITUTION Vol. 1, § 1.2 (1978) at 7-8, for a history of the evolution of quasi contractual actions as a means to enforce restitutionary claims. For a discussion of the origins and characteristics of restitution, see J. Cooke and D. Oughton, THE COMMON LAW OF OBLIGATIONS 51-59 (2d ed. 1993). See also Palmer, supra at § 1.1; Andrew Kull, Rationalizing Restitution, 83 CAL.L.REV. 1191 (1995). Restitution is one of the three principal strands of law which comprise the common law of obligations, the other two being contract and tort. Cooke and Oughton, supra at 59.
[5] Quasi contracts "rest solely on a legal fiction." First Nat. Bank v. Matlock, 99 Okl. 150, 226 P. 328, 330-31 (Okla.1924). They are not contracts but "are clothed with the semblance of contract for the purpose of the remedy. . . ." Id. at 331.
[6] See Douglas Laycock, The Scope and Significance of Restitution, 67 Tex.L.Rev. 1283-85 (1989).
[7] State Bd. of Pub. Affairs v. Principal Funding Corp., 542 P.2d 503, 506 (Okla.1975).
[8] Principal Funding, supra note 6 at 504.
[9] See R.R. Tway, Inc. v. Oklahoma Tax Com'n, 910 P.2d 972, 980 (Okla.1996); see also Clay v. Ind. School Dist. No. 1 et al., 935 P.2d 294, 302 (Okla.1997).
[10] Judicially recognized governmental immunity from claims resting on either the law of contracts or torts has earlier been abrogated. Where the State has entered into a valid contract and the requisite appropriations have been made, governmental immunity from suit has been waived to the extent of the contractual obligations. Principal Funding, supra note 6 at 506. The judicially crafted doctrine of governmental immunity from liability for wrongfully inflicted harm was rescinded by the holding of Vanderpool v. State, 672 P.2d 1153, 1156-57 (Okla.1983).
[11] See Vanderpool, supra note 9 at 1155; see also AM.JUR.2D States, Territories, and Dependencies § 99 (1974).
[12] Vanderpool, supra note 9 at 1157.